IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL A. GREEN,

Petitioner,

v.

MICHAEL LEMKE,[1]

Respondent.                              Case No. 10-cv-552-DRH-DGW

## MEMORANDUM & ORDER

**HERNDON, Chief District Judge:**

This matter is before the Court on the Petition for a Writ of Habeas Corpus filed by petitioner on July 26, 2010 (Doc. 1).   For the reasons set forth below, this Court **DENIES** the Petition and **DISMISSES WITH PREJUDICE** this matter.

### FINDINGS OF FACT

On March 6, 2004, petitioner beat to eventual death the two year old child of his girlfriend.  He was charged with first degree murder, tried before a jury in Madison County, Illinois, found guilty, and sentenced to 60 years' imprisonment.

On direct appeal, petitioner raised two grounds for relief: that the trial court erred in admitting his video-taped statement because it was taken in violation of the

---

[1] Michael Lemke is substituted as respondent herein as he is the current warden at Stateville Correctional Center. *See* Fed. R. Civ. P. 25(d)(1).

Sixth Amendment; and, the trial court erred in refusing to give an involuntary manslaughter jury instruction (Doc. 16-9, p. 3-4).   In a Rule 23 Order dated March 16, 2007, the Illinois Court of Appeals affirmed the conviction (Doc. 1-1, pp. 22-31). With respect to the first claim, the court of appeals recounted the facts surrounding the video-taped statement: [2]   On March 7, 2004, petitioner was arrested on unrelated warrants and signed a waiver of his *Miranda* rights prior to being interviewed about the child's injuries (on that date, the child was still alive although in critical condition), which petitioner indicated he knew nothing about (*Id*. at 26). Petitioner signed a second waiver on March 8, 2004, after the child died and was interviewed: this time petitioner indicated that he hit the child (*Id*. at 26-27).   An attorney, Ted Barylske, visited petitioner at the jail on that date but did not enter an appearance on his behalf (*Id*. at 27).   Petitioner was charged on March 9, 2004 and an initial appearance was held the next day (*Id*.).   At that hearing, petitioner indicated that he did not want the public defender to represent him and that he was in the process of trying to hire Mr. Barylske (*Id*.).   Petitioner appeared at a preliminary hearing a few weeks later, on March 26, 2004, still without an attorney, and requested a continuance (*Id*.).   On March 29, 2004, petitioner was advised of his *Miranda* rights, signed a waiver, agreed to a video-taped interview, and was interviewed again (in which he admitted to inflicting more extensive injuries on the

---

[2] These records are presumed to be correct; petitioner has not offered any argument to rebut this presumption.   28 U.S.C. § 2254(e)(1).

child) (*Id*. at 28).   On these facts, the court of appeals first noted that once a criminal defendant invokes his right to counsel, the state may not initiate a conversation with him and any such evidence would be suppressed (*Id*. at 29). The court then held that "the defendant's expression of his intent to hire a private attorney is not a sufficiently clear indication that he wanted the assistance of a lawyer in dealing with the police" (*Id*. at 30).   As such, because petitioner had not invoked his right to counsel for 6th Amendment purposes, the police were free to question him (after giving *Miranda* warnings).

With respect to the refusal to instruct the jury on involuntary manslaughter, the court stated that "[a]ny suggestion that the defendant acted recklessly in causing [the child's] death was negated by evidence that a defenseless, two-year-old child was severely shaken and beaten by a 23-year-old man and that the child sustained extensive injuries to her brain and abdomen from the beating which caused her death" (*Id*. at 31).   These claims were also raised in a Petition for Leave to Appeal (PLA), (Doc. 16-11, p. 7), which was denied on November 29, 2007.   *People v. Green*, 879 N.E.2d 934 (Ill. 2007).

In a *pro se* petition for post-conviction relief, petitioner raised four grounds for relief:

1.   The trial court erred in allowing a juror to serve (Mrs. Corrigan) who was related to the State's witness, Tawna Cooper, an employee of the Department of Children and Family Services; and, trial counsel was ineffective for failing to interview Mrs. Corrigan (Doc. 16-5, p. 27).

2.   The trial court erred in allowing photographic (autopsy) evidence

of the child's injuries; and, trial counsel was ineffective for failing to object (Doc. 16-5, p. 31).

This petition was denied on waiver grounds and petitioner's claims were further found to be without merit (Doc. 16-5, p. 40-41).[3]   Petitioner was appointed counsel on appeal; however, that counsel sought to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), stating that any request for review would be without merit (Doc. 16-14, p. 2).   In a response, petitioner essentially argued that the juror was biased because she may have acquired information from the potential witness outside of the trial (Doc. 16-15, pp. 6-9).   Petitioner also argued that trial counsel failed to object as to 2 (of the 8) autopsy photographs, which unduly prejudiced the jury (Doc. 16-15, pp. 10-11).

In its Rule 23 Order affirming the trial court's decision, the Illinois Court of Appeals considered the merits of petitioner's ineffective assistance of counsel claims only.   The Court found that petitioner failed to present evidence that the juror had in fact heard about his case outside of the trial that would contradict the juror's testimony that "I haven't really heard about the case or anything" (i.e. no prejudice) (Doc. 1-1, p. 36).   The Court also found that petitioner's trial counsel had in fact objected to 6 of the 8 autopsy photographs and that the failure to object to the remaining 2 photographs did not affect the outcome of the trial (*Id*. at 36).

---

[3]  In particular, the trial court indicated that the juror stated that she could judge the witness in the same manner as other witnesses, that the witness, in any event, did not testify, and that Petitioner's counsel had filed (and argued) a motion in limine to exclude the autopsy photographs (which was denied) (Doc. 16-5, p. 41).

Page **4** of **17**

Thus, the Court found that trial counsel was not ineffective.   In a PLA, petitioner raised these two ineffective assistance of counsel claims.   The PLA was denied on January 27, 2010.   *People v. Green*, 924 N.E.2d 458 (table) (Ill. 2010).

Before this Court, petitioner raises 4 grounds for relief:

1.   His video-taped statement should have been suppressed because it was taken in violation of the 5th and 6th Amendments.  (Petitioner cites to *Montejo v. Louisiana*, 556 U.S. 778 (2009), for this proposition).

2.   The trial court erred in failing to give an involuntary manslaughter instruction.

3.   Appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to properly question/investigate juror Corrigan and for failing to object to 2 out of the 8 autopsy photographs.

4.   The trial court erred in admitting the 2 autopsy photographs because they unduly prejudiced Petitioner.

In response, the respondent argues that each of these claims is defaulted and, in any event, are without merit.

### CONCLUSIONS OF LAW

Title 28 U.S.C. § 2254 provides that the Court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of the State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   Accordingly, "[f]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law."   *United States ex rel. Lee v. Flannigan*, 884 F.2d 945, 952

(7th Cir. 1989).   Before seeking such relief, a petitioner is required to exhaust available state remedies.   28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

Prior to reaching the merits of a claim, the exhaustion requirement requires that petitioner "fairly present his federal claims to the state courts by arguing both the law and the facts underlying them."   *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010).   Fair presentment requires that petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."   *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).   In asserting an ineffective assistance of counsel argument, petitioner is also required to raise each "specific ground for ineffectiveness." *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998).   A claim is procedurally defaulted if petitioner fails to raise constitutional claims in state court. *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013).

In order to preserve defaulted claims, petitioner must show cause and prejudice that would excuse the default.   *See Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010).

> Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner for presented his claim.   Prejudice is established by showing that the violation of the petitioner's federal rights worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.   *Id.* (internal citations and editing marks omitted).

Alternatively, petitioner must show that "failure to consider his claim would result

in a fundamental miscarriage of justice (i.e. a claim of actual innocence)." *Weddington*, 721 F.3d at 465 (citations and quotation marks omitted).

**Ground 1: Petitioner's video-taped statement should have been suppressed because it was taken in violation of the 5th and 6th Amendments.**

Petitioner's original claim before the state courts was that he should not have been interviewed by the police after he had "invoked" his right to counsel at his initial appearance. Petitioner had some support for this claim in *Jackson v. Michigan*, 475 U.S. 625 (1986), in which the Supreme Court held that, pursuant to the 6th Amendment, "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* at 636.[4] The state courts held, as noted above, that petitioner did not invoke his right to counsel and that the rule in *Jackson* does not apply.

The proverbial sands, however, have shifted beneath petitioner because the Supreme Court recently overturned *Jackson* in *Montejo v. Louisiana*, 556 U.S. 778 (2009). In *Montejo*, the Court held that while the 6th Amendment guarantees the right to counsel at all critical stages of a prosecution (including interrogation), "[t]he defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Id.* at 786. Thus, if a criminal

---

[4] *Jackson* essentially extended the rule from *Edwards v. Arizona*, 451 U.S.477 (1981), which likewise held, pursuant to the 5th Amendment, that "an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation . . . until counsel has been made available to him . . . unless the accused himself initiates further communication . . . ."

defendant validly waives his *Miranda* rights, even after asserting his right to counsel, he can be interrogated by the authorities without running afoul of the 6th Amendment.   In petitioner's case, then, whether he invoked the right to counsel prior to his interrogation is irrelevant and his arguments on this point, before the state courts, would not lead to habeas relief in this Court.[5]   Petitioner's claim, then, that his 6th Amendment right to counsel was violated when he was interrogated after he invoked his right to counsel (and that his subsequent statement should have been suppressed) is without merit.

Petitioner has recognized this conclusion and now takes a different tack: he now asserts that he did not knowingly and intelligently waive his *Miranda* rights (Doc. 1-1, p. 8-9).   In particular, he asserts that he was "badgered" into waiving his rights by officers who knew that he did not want to speak to the police without an attorney present.   This claim was never made before the state courts and is consequently procedurally defaulted.   Petitioner argues, however, that just like the petitioner in *Montejo*, he should be afforded the opportunity to make this argument before this Court.   First, *Montejo* did not create a new rule of law regarding *Miranda* waivers.   Second, Montejo was permitted to make an argument regarding the invocation of his right to counsel and the possible involuntariness of his *Miranda* waiver because there were some factual disputes in the record that required resolution.   No such questions exist in this case.

---

[5] As respondent points out, the state can benefit from new Supreme Court decisions, applied retroactively, while Petitioner cannot.  *Lockhart v. Fretwell*, 506 U.S. 364, 372-373 (1993).

Petitioner cannot show cause and prejudice for the default.   As to cause, petitioner has not shown that some impediment prevented him from raising this claim before the state courts.   As to prejudice, petitioner has made no showing that his *Miranda* waivers were not knowing and voluntary such that any subsequent statements, including his March 29, 2004 video-taped statement, should have been suppressed.   At a November 5, 2005 hearing on petitioner's motion to suppress the video-taped statement (where petitioner was represented by an attorney, Tim Berkley), the following exchange occurred:

> The Court: Are you saying on all three statements it was a knowing, intelligent, and voluntary waiver?
>
> Mr. Berkley: Yes.
>
> The Court: Of his right to counsel –
>
> Mr. Berkley: Yes.
>
> The Court: On all three statements – you're conceding that?
>
> Mr. Berkley: I'm conceding that.   What I'm saying is on the videotaped statement and those statements that were being associated with that videotape, they had no right to go into the county jail and reinitiate contact with him.   He had indicated that he was going to be represented by counsel, and the State knew that if they'd waited until after prelim, he would be represented by the public defender.
>
> (Doc. 16-6, p. 50).

The record establishes, then, that petitioner made knowing and intelligent waivers of his *Miranda* rights.   In light of this showing, there can be no prejudice that would excuse the default.

Page **9** of **17**

As to the particular claim that he was "badgered" into waiving his rights, petitioner necessarily must rely on the holding in *Edwards*:

> we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

> *Id.* 451 U.S. at 484-485.

This rule was designed because, without such a rule:

> The authorities through badgering or overreaching – explicit or subtle, deliberate or unintentional – might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance.

> *Smith v. Illinois*, 469 U.S. 91, 98 (1984) (citations, editing, and quotation marks omitted).

Of course, in this case there can be no finding that petitioner was badgered because there is more than just continued interrogation after petitioner was advised of his rights: petitioner signed a valid (i.e. knowing and voluntary) waiver of his rights.   In any event, prior to reaching the question of whether petitioner was in fact badgered into waiving his *Miranda* rights, petitioner must establish that the state courts erred in finding that he did not invoke the right to counsel.   As noted above, the Illinois Court of Appeals held that petitioner's statements that he intended to hire private counsel were not "considered a clear request to have the assistance of

counsel before speaking with the police" (Doc. 1-1, p. 29).   Petitioner offers no argument or case authority that the states court's determination was either contrary to or involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts in light of the evidence.

> Whether an accused invokes his right to counsel is an "objective inquiry:"

> If an accused makes a reference to an attorney that is ambiguous, in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our Supreme Court's precedents do not require the cessation of questioning . . . Rather, the accused must make a clear and unambiguous assertion of his right to counsel to stop questioning, although there is no exact formula or magic words for an accused to invoke his right.

> *United States v. Lee*, 413 F.3d 622, 625 (7th Cir. 2005).

This Court cannot find that the state courts unreasonably held that indicating that he will be getting a private attorney, after turning down a public defender, is not an unambiguous invocation of the right to an attorney.   In *United States v. Shabaz*, 579 F.3d 815 (7th Cir. 2009), the Seventh Circuit Court of Appeals found that "[a] common point among statements that have been deemed insufficient is that they do not clearly imply 'a present desire to consult with counsel.'"   *Id*. at 819. Petitioner's statements that he is going to get an attorney did not represent a desire to consult with an attorney prior to his interrogation.   There is no indication in the record that prior to any interrogation petitioner made any reference to or request for an attorney.   Therefore, this Court cannot find that the state courts acted unreasonably in holding that petitioner did not invoke his right to counsel.

**Ground 2: The trial court erred in failing to give an involuntary manslaughter instruction.**

Petitioner next claims that his due process rights were violated when the trial court failed to instruct the jury on involuntary manslaughter.  As noted above, petitioner raised the claim of a manslaughter instruction on direct appeal. However, petitioner did not frame his argument as a constitutional claim; rather, he argued that, pursuant to state law, it was error for the trial court to fail to give an instruction for voluntary manslaughter when there is any evidence in the record to support such a claim.   Petitioner did not cite to any federal case authority, did not rely on any state law case that included a relevant constitutional analysis, did not frame his argument to call to mind a specific federal right, and did not allege a fact pattern that is in line with mainstream constitutional litigation.  *See Ward v. Jenkins*, 613 F.3d 692, 696-697 (7th Cir. 2010).   Moreover, even though petitioner stated in his PLA that his due process rights were violated by the failure to give the manslaughter instruction, this claim was not presented to the Illinois Court of Appeals.  As such, this claim was not presented through one complete round of state review and it is procedurally defaulted.  Petitioner has made no claim that there is cause and prejudiced for this default.[6]

**Ground 3: Appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to properly question/investigate juror Corrigan and for failing to object to 2 out of the 8 autopsy photographs.**

---

[6] In any event, there is no showing that the due process clause would require such an instruction in a non-capital case.  *See Calloway v. Montgomery*, 512 F.3d 940, 944 (7th Cir. 2008).

This claim is likewise procedurally defaulted.   While petitioner made a claim before the state courts that his *trial* counsel was ineffective for failing to raise these claims, he failed to assert that *appellate* counsel was ineffective through one complete round of review.   As indicated in his response to the *Finley* motion filed by appointed counsel in post-conviction appeal, petitioner did not raise the issue of whether appellate counsel was ineffective in his post-conviction brief filed with the trial court (Doc. 16-15, p. 3-4).   And, merely raising the issue in his response to the *Finley* motion is insufficient to preserve the claim.   *See Lewis v. Sternes*, 390 F.3d 1019, 1031 (7th Cir. 2004) ("we reject the notion that a petitioner fairly presents his federal claim to the state courts when he raises that claim for the first time in an appellate brief after his lawyer has filed a motion to withdraw under *Finley*").   Petitioner has not shown cause and prejudice for this default.

**Ground 4:   The trial court erred in admitting 2 autopsy photographs because they unduly prejudiced petitioner**

In his post-conviction petition before the trial court, petitioner made the claim that his trial counsel was ineffective for failing to object to the autopsy photographs.   He also asserted:

> The trial court allowing the jury to see such inflammatory photgraphs [sic], and counsel's failure to object and argue against the admission of the mentioned photographs further denied the defendant Michael A. Green of his right to counel [sic] and due process as provided by the 6th and 14th Amendments of The U.S. Constitution, and Article 1, Section 2 and 8 of The Illinois Constitution.

(Doc. 16-5, p. 33).

The basis of petitioner's argument was that the photographs, which were autopsy photographs depicting the victim's brain, scalp, and internal structure, were inflammatory and unduly prejudicial.   The trial court did not include this freestanding claim in it recitation of petitioner's grounds for post-conviction relief (Doc. 16-5, p. 39).[7]   As to the claims it did consider, the trial court initially found that these claims could have been raised on direct appeal and are consequently waived (Doc. 16-5, p. 40).   The court went on to hold that petitioner's claims for ineffective assistance of counsel were without merit (*Id*.).   Petitioner's appointed counsel, in his *Finley* motion, did not address whether petitioner was making a freestanding claim with respect to the photographs and construed this claim only under the umbrella of an ineffective assistance of trial counsel claim (Doc. 16-14, pp. 6-7).   Petitioner pointed out this limited construction in his response (Doc. 16-15, p. 11-12).   However, the court of appeals only addressed petitioner's ineffectiveness claims, not the underlying substantive claims.   In his PLA, petitioner again raised the issue of whether the trial court erred in allowing the photographs to be admitted into evidence (in addition to asserting an

---

[7]  The trial court stated:

> As grounds for post-conviction relief, Petitioner claims that the trial court erred by allowing a juror to serve who knew one of the potential witnesses; ineffective assistance of counsel because the trial court allowed certain photographs into evidence; and ineffective assistance of counsel for not objecting to the juror.

> (*Id*. (all caps omitted)).

ineffectiveness claim) (Doc. 16-17, p. 11).

Contrary to respondent's suggestion, then, this Court cannot find that petitioner procedurally defaulted this claim by failing to raise it in one complete round of state review. That the state courts failed to address the argument does not mean that petitioner failed to raise the claim. When the state courts fail to address a constitutional claim this Court would conduct a *de novo* review of the claim. *See Harris v. Thompson*, 698 F.3d 609, 624-625 (7th Cir. 2012). Petitioner argues that admittance of the photographs "deflected the jury attention away from the relevant evidence at trial" and denied him a fair trial.[8] A federal court should not review state court rulings on the admissibility of evidence absent a "resultant denial of fundamental fairness or the denial of a specific constitutional right." *Stomner v. Kolb*, 903 F.2d 1123, 1128 (7th Cir. 1990) (quotation marks and citations omitted). Any error that was committed "must have produced a significant likelihood that an innocent person has been convicted." *Howard v. O'Sullivan*, 185 F.3d 721, 723-724 (7th Cir. 1999). There is no showing, or even argument on petitioner's part, that he is an innocent person. Indeed, the record as

---

[8] These photographs are identified as Exhibits 39 and 42 and are not included on the record before this Court. Respondent indicates that the state will not release the photographs absent a court order. This Court finds, however, that review of the actual photographs is not necessary. While a picture is worth a thousand words, Dr. Raj Nanduri (a pathologist who testified at Petitioner's trial), testified that Exhibit 42 was a photograph of the child's exposed brain showing a "hemorrhage under the dura" and "bright red blood which is subdural that is not normal . . . ." (Doc. 16-7, pp. 130-131). Exhibit 39 was an autopsy photo of the child's lung which showed "dark, bluish purple color" reflecting bruising (*Id.* at 139). These photographs were intermingled with other autopsy photographs to which petitioner has not objected. Each of the photographs were used to provide a visual representation of the injuries reflected in Dr. Nanduri's autopsy report. Dr. Nanduri subsequently testified that the child died from "a closed head injury and abdominal blunt trauma" (*Id.* at 146).

Page **15** of **17**

a whole, in addition to the briefs that petitioner himself has submitted, show that he did in fact cause the death of a young child by shaking and beating her to death.   In this case, a review of the trial transcript reveals that the jury was presented with evidence that petitioner admitted striking the child in the face and punching her in the stomach, that he knocked her off a counter and onto a concrete floor, that she suffered bruising on her head, back, abdomen, and face, that her brain was bruised and swollen, that she had a rib fracture and a liver laceration.   The jury also heard that prior to the child's contact with petitioner, she was otherwise healthy and free from injuries.   Petitioner himself admitted to striking the child and there was substantial evidence that the injuries inflicted by petitioner caused her death.   The jury's viewing of two autopsy photographs (that were part of a group of 8) could not have resulted in a fundamentally unfair trial nor did it deny petitioner of any constitutional right: they were of little importance in the trial setting in light of the other evidence presented.   *Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000) ("And courts must be careful not to magnify the significance of errors which had little importance in the trial setting.").

**The Court denies petitioner a certificate of appealability.**

Finally, a habeas petitioner is not entitled to file an appeal from the denial of his petition unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A).   A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2).   A petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   The Court finds reasonable jurists would not debate the above findings and conclusions and thus the Court declines to issue a certificate of appealability.

CONCLUSION

For the foregoing reasons, this Court **DENIES** the petition and **DISMISSES** this matter **WITH PREJUDICE**. A certificate of appealability shall not issue. The Clerk is instructed to close the file and enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 29th day of September, 2013.

David R. Herndon
2013.09.29
16:57:22 -05'00'

**Chief Judge**
**United States District Court**